RECEIVED

JUN - 9 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ESSO EXPLORATION AND PRODUCTION CHAD, INC. | CIVIL ACTION NO. 09-0467 |
| VERSUS | JUDGE DOHERTY |
| TAYLORS INTERNATIONAL SERVICES, INC. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Currently pending before the Court is a "Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure," a "Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure," and a "Motion to Strike," filed by defendant Taylors International Services, Inc. ("Taylors Inc.").[1] [Docs. 17, 31 & 36]  For the following

---

[1] Plaintiff filed an amended complaint on the same day as it filed it's opposition memorandum to defendant's original motion to dismiss. [Docs. 26 & 27] Thereafter, defendant filed its motion to dismiss the amended complaint. [Doc. 31] The memorandum in support of defendant's motion to dismiss the amended complaint states in its entirety as follows:

> Defendant, TAYLORS INTERNATIONAL SERVICES, INC. ("Taylors Inc.") moves this Honorable Court for dismissal of the Amended Complaint of Esso Exploration and Production Chad, Inc. ("Esso Chad") (R.Doc. #26) for the reasons previously outlined in the pending Motion to Dismiss (R.Doc. #17). Simply, the Amended Complaint does not rectify the pleading insufficiencies of the Complaint. Rather, the Amended Complaint adds conclusory statements that are insufficient to state a cause of action pursuant to the Federal Rules of Civil Procedure, specifically Rules 8 and 12. As such, Taylors Inc. seeks dismissal of both the Original Complaint and Amended Complaint of Esso Chad.
>
> Taylors Inc. incorporates and adopts in extenso the law and arguments set forth in the pending Motion to Dismiss the Original Complaint of Esso Chad and supporting documents. R. Doc. #17.

[Doc. 31-2, p.1] Accordingly, the Court will address the motions to dismiss in this Ruling in light of the allegations contained in the amended complaint.

1

reasons, the motions to dismiss are DENIED in their entirety, and the motion to strike is GRANTED.

## Background

Plaintiff's amended complaint sets forth the following allegations in the section entitled "Statement of Facts":

> 3. Upon information and belief, Defendant is the alter ego of Taylors International Services, Ltd. ("Taylors Ltd."), a foreign company organized under the laws of Alderney, Channel Islands, United Kingdom. Additionally, Defendant and Taylors Ltd. constituted a single business enterprise. Therefore, Defendant is liable and legally obligated to satisfy the arbitration award entered against Taylors Ltd. and in favor of Plaintiff.
>
> **A.   Taylors Ltd. Breached Its Catering Contract with Plaintiff**
>
> 4. Taylors Ltd. and Plaintiff entered into a Catering and General Camp Services contract in 2001 (the "Catering Contract"). The Catering Contract provided that Taylors Ltd. would furnish goods and services to Plaintiff in connection with Plaintiff's exploration and production activities in the country of Chad.
>
> 5. In 2003, Taylors Ltd. summarily abandoned the Catering Contract and the country of Chad, failing to pay its catering and labor suppliers (many of which were located in Chad). As part of Taylors, Ltd.'s exit from Chad, the Catering Contract was terminated in December 2003.
>
> 6. Taylors Ltd.'s actions breached the terms of the Catering Contract and resulted in Plaintiff having to pay millions of dollars in claims brought by the Chadian catering and labor suppliers whom Taylors Ltd. failed to pay.
>
> **B.   The ICC Awarded Plaintiff Damages**
>
> 7. Following Taylors Ltd.'s breach of the Catering Contract, Plaintiff sued Taylors Ltd. in the United States District Court for the Southern District of Texas in June 2004.
>
> 8. Pursuant to a binding arbitration clause contained in the Catering Contract, Taylors Ltd. obtained a stay of the civil action in the Southern District of Texas and thereafter filed claims against Plaintiff in the International Chamber of Commerce International Court of Arbitration ("the ICC"). Plaintiff filed its claims against Taylors, Ltd., as counterclaims, in the ICC arbitration.

9. Pursuant to a Final Order dated March 23, 2006, the ICC awarded Plaintiff the following as a result of Taylors Ltd.'s breaches of the Catering Contract:

> a. Taylors Ltd. to pay Plaintiff the sum of $3,113,884.46, plus interest at the rate of 9% per annum from January 1, 2005, until payment;
>
> b. Taylors Ltd. to indemnify Plaintiff in respect of any sums which Plaintiff is obligated to pay to Senev-Tchad (a Chadian supplier) pursuant to the order of a competent court;
>
> c. Taylors Ltd. to pay Plaintiff the sum of $590,588.31 in respect of attorneys' fees and costs, together with interest at the rate of 9% per annum on any amount unpaid from May 1, 2006, until payment;
>
> d. Taylors Ltd. to pay Plaintiff the sum of $32,500.00 in respect of the fees and expenses of the sole arbitrator and the ICC International Court of Arbitration's administrative expenses, together with interest at the rate of 9% per annum on any amount unpaid from May 1, 2006, until payment.

Currently, the ICC award exceeds $5,000,000.

### C. Plaintiff's Award Has Been Confirmed By The Southern District Of New York And Affirmed By The Second Circuit Court of Appeals

10. Following the entry of the ICC award, Plaintiff moved to confirm the award in the District Court for the Southern District of New York. In response, Taylors Ltd. moved to vacate the arbitration award.

11. Pursuant to a Decision and Order dated November 14, 2006, the District Court for the Southern District of New York granted Plaintiff's motion to confirm, rejected Taylors Ltd.'s motion to vacate, confirmed the arbitration award, and entered judgment against Taylors Ltd.

12. Taylors Ltd. appealed the District Court's Decision and Order to the United States Second Circuit Court of Appeals.

13. Pursuant to Summary Order, the Second Circuit affirmed the District Court's Decision and Order and held that the arbitration award was "final and definite" within the meaning of 9 U.S.C. § 10(d) of the Federal Arbitration Act.

### D. Taylors Ltd. Perpetrated A Plan To Hide Its Assets From Any Award or Judgment

14. Plaintiff has attempted to execute and collect against Taylors Ltd. the sums awarded to Plaintiff pursuant to the arbitration award.

15. Unknown to Plaintiff, Taylors Ltd. – in apparent anticipation of being found liable to Plaintiff for breach of the Catering Contract – planned to hide (and did hide) its assets from any judgment. The plan is evidenced by the following email exchange between Jon Murphy ("Murphy") (one of the officers of Defendant) to Shabbir Ali ("Ali") (one of the directors of Taylors Ltd.) on March 28, 2004 ("the E-Mail"). The E-Mail, which addressed actual and potential claims by Plaintiff against Taylors Ltd., stated in pertinent part:

> ***In a worst case scenario is there anyway that we can protect TSS [Taylors Support Services Limited] from its association with TIS [Taylors Ltd.] by either transferring ownership to TTS [Taylors Technical Services] or organising a paperwork management buy out so that it can't be seen as an asset of TIS [Taylors Ltd.] . . . . .***
> I'm thinking that if this became a legal wrangle in the end that we could jeopardise our chances with the MOD [Ministry of Defense] if TSS [Taylors Support Services] was seen to be at any risk. We need to discuss this with Sandy and take legal advice. ***I suppose, it should not be a problem if we have to protect ourselves, the same would apply to the American business.***

16. The "American business" referenced in the E-Mail is Defendant. At that time, Defendant was a wholly-owned branch of Taylors Ltd. Mr. Murphy – the same individual who discussed hiding the assets of Taylors Ltd. while he served as Director of Operations for one of Taylors Ltd.'s many divisions – is now the Chief Operating Officer for Defendant.

17. The "TSS" referenced in the E-Mail is Taylors Support Services (an additional Taylors-family entity); the "TIS" referenced in the E-Mail is Taylors Ltd.; the "Sandy" referenced in the E-Mail is Howard Neville Goodman ("Goodman"), a majority shareholder of Taylors Ltd. and former director of Defendant.

18. Based on information and belief, the plan described in the E-Mail was carried out by the principals of Taylors Ltd. and Defendant. The plan shifted ownership of Taylors Ltd. to Trellech Limited, a British Virgin Island off-shore entity which, upon information and belief, is a commonly controlled and related entity that is owned and/or controlled by principals of Taylors Ltd. and/or Defendant.

19. The transfer to hide Taylors Ltd.'s assets took place in July 2004, just one month after Plaintiff filed suit against Taylors Ltd. in the Southern District of Texas, seeking damages for Taylors Ltd's breach of the Catering Contract.

20. To effectuate the transfer, Goodman and others entered into an agreement titled "Share Sale and Loan Novation." The Share Sale and Loan Novation called for the sale by Taylors Ltd. of all the outstanding capital stock in Defendant to Trellech Limited (together with the transfer of the outstanding shares of stock held by Taylors Ltd. in four other Taylors-related entities). Trellech Limited assumed payment obligations in excess of $3,000,000 in aggregate debt owed by Taylors Ltd. Upon information and belief, this transaction lacked substance in that Trellech Limited itself had no financial ability to repay this indebtedness and/or those loans have not been repaid. The total consideration paid by Trellech Limited to Taylors Ltd. for of all the outstanding capital stock in Defendant and four other Taylors-related entities was $5.00.

21. Based upon information and belief, the sale by Taylors Ltd. to Trellech Limited was part of a prearranged plan between commonly controlled and owned entities to reduce or eliminate Taylors Ltd.'s exposure to Plaintiff.

**E. Defendant Is The Alter Ego Of Taylors Ltd. And They Form A Single Business Enterprise**

22. During all pertinent times herein, Defendant was the "alter ego" of Taylors Ltd. in that the two entities, among other things, had common ownership, directors, officers, management, business purposes and operations. As an "alter ego" or "instrumentality" of Taylors Ltd., Defendant is legally obligated to Plaintiff to satisfy the arbitration award entered against Taylors Ltd.

23. Alternatively, during all pertinent times herein, Taylors Ltd. and Defendant constituted a single business enterprise and Defendant is legally obligated to Plaintiff to satisfy the arbitration award.

24. During all pertinent times herein, Defendant and Taylors Ltd. had common ownership and management.

    a.    An organizational chart of Taylors Ltd. for the year 2002 reflected that Defendant was within the larger Taylors Ltd. organization.

    b.    Corporate filings for Defendant dated December 11, 2003, stated that Taylors Ltd. was the sole shareholder of Defendant.

    c.    Corporate filings by Taylors Ltd. dated April 23, 2004, identify Ali and Goodman as the sole shareholders of Taylors Ltd. Other corporate filings for Defendant dated July 19, 2004, identify Goodman as the president of Defendant and

        Ali as the Secretary of Defendant;

d. Taylors Ltd. and Defendant have had overlapping ownership, officers and directors as follows:

1. Goodman held corporate offices in both companies:

    <u>Defendant</u>: Goodman appears in the corporate filings of Defendant during the 1994 – 2004 time period as its corporate president. Goodman is listed in corporate filing by Defendant as the Chairman/Director in January 2005 and is thereafter listed as its sole Director in 2005 – 2006. Goodman is also listed as the Director in the corporate filings of Defendant during the 2001 – 2005 time period.

    <u>Taylors Ltd.</u>: Goodman appears as a Director of Taylors Ltd. in its filings as of December 31, 2003, and December 31, 2004. Goodman is also shown as being the owner of 75% of the outstanding stock of Taylors Ltd. as of December 31, 2003, in corporate filings by Taylors Ltd. Goodman is shown in an October 13, 2006, filing by Taylors Ltd. as one of its two shareholders.

2. Ali held corporate offices in both companies:

    <u>Defendant</u>: Ali is listed as the Director and holding the positions of Secretary and Treasurer of Defendant during the 1994 – 2003 time period. In the corporate filings by Defendant, Ali is listed as a Director in a 1996 corporate filing as well as being its Managing Director in a corporate filing dated December 11, 2003.

    <u>Taylors Ltd.</u>: Ali appears in filings by Taylors Ltd. as its Managing Director as of December 31, 2004, as well as the owner of 25% of its outstanding shares as of December 31, 2003. Ali is shown in an October 13, 2006, filing by Taylors Ltd. as one of its shareholders.

3. Murphy held corporate offices in both companies:
    <u>Defendant</u>: Murphy is listed as an owner of 5% or more of the stock of Defendant as of August 18, 2006,

6

in its corporate filing. Murphy is currently the Chief Operation Officer of Defendant (and is currently listed on the website of Defendant as a Vice President). Murphy is also a current shareholder of Defendant.

<u>Taylors Ltd.</u>: Murphy identified himself as a Director/Secretary of Taylors Ltd. in an April 23, 2004, corporate filing.

25. Taylors Ltd. consisted of multiple, related companies, including Defendant. Many of the businesses and/or companies were created to serve service contracts in specific jurisdictions. For example, in order to service the contract Taylors Ltd. maintained with Plaintiff in Chad, Taylors Ltd. created a new division, branch, or subsidiary. That division, like Defendant, was one of many fragmented operations under the Taylors Ltd. umbrella of operations.

26. Taylors Ltd. and Defendant utilized certain unified administrative controls – including financing, accounting, and personnel functions. Namely, Taylors Ltd. maintained a headquarters office that performed and/or controlled certain administrative, financial, and accounting functions for the benefit of all of its "branches" (including Defendant) while Taylors Ltd. and its "branches" pursued similar or supplementary business functions. Ali, the director and shareholder of Taylors, Ltd. was responsible for overseeing the implementation of financial and accounting procedures by the project managers of each of Taylors' various operations – including the Defendant.

27. In several instances, Defendant or Taylors Ltd. performed transactions with little economic benefit to it and instead was meant to benefit the other entity. Taylors Ltd. and Defendant provided each other non-interest, non-documented loans. Defendant provided inventory or supplies to Taylors Ltd. "at cost" or with little to no markup (and vice versa).

28. On more than one occasion, Defendant provided financing to Taylors Ltd. and/or the various branches or divisions of Taylors Ltd. Specifically, during the course of the Catering Contract, Defendant transferred money and/or assets to Taylors Ltd. for use in its Chadian operations.

29. Taylors Ltd. and its family of companies (including Defendant) maintained a high volume of intercompany debt, showing a lack of adequate capitalization for Taylors, Ltd. and its companies (including Defendant). Taylors Ltd. (and its family of companies, including Defendant) were financed through intercompany debt among members of the group and/or personal loans from Goodman (or his family members) and/or Ali.

7

30. Though intercompany transfers and direct payments to third parties, Defendant would, at times, pay the salaries and other expenses or losses of Taylors Ltd. and its "branches" (and vice versa). Ali confirmed during the ICC arbitration between Plaintiff and Taylors Ltd. that Defendant made direct payments to suppliers for Taylors Ltd.'s division in Chad.

31. Taylors Ltd. did not respect any formal, corporate separateness between itself and its various subsidiaries, "divisions," or "branches," including Defendant. At least two former officers of Taylors Ltd. have confirmed that Taylors Ltd. and/or Defendant (a) did not respect any formal, corporate separateness between itself and Defendant, (b) maintained no formal corporate structure or management, (c) had no clear financial or accounting structure amongst the various operations, and (d) continually transferred money between operations.

32. Goodman, Ali, Murphy, and Mr. Jamie Williams, appear to have worked for both Taylors Ltd. and Defendant at some point in time. Upon information and belief, other individuals have worked for both companies.

33. As noted above, certain services were provided by Taylors Ltd. to its various divisions and branches, including Defendant. Additionally, Defendant's employees have performed services on behalf of Taylors Ltd. – including, but not limited to, procurement services, shipping services, logistical services, purchasing services, and human resource activities.

34. The volume of intercompany transfers that took place between Taylors Ltd. and its family of companies (including Defendant) were not accompanied with any formal loan documents or terms.

35. Due to the high volume of intercompany transfers and services noted above (and along with the lack of corporate formalities and loan documentation), there was an unclear allocation of profits and losses between Taylors Ltd. and its various divisions and branches, including Defendant.

[Doc. 26, ¶¶ 3-35 (emphasis in original)]

## Motions to Dismiss

I.   **Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted") is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). "'When a

federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Lormand v. US Unwired*, 565 F.3d 228, 267 (5th cir. 2009)(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds in Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand* at 232 (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including any attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th cir. 2000). The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Breaches Litigation*, 495 F.3d 191, 205 (5th cir. 2007). Furthermore, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Breaches Litigation* at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555 (internal alterations, punctuation and citations omitted); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(While the complaint does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). The Fifth Circuit has described the "plausibility" standard of pleading to be applied to Fed.R.Civ.P. 8(a)(2) as follows: "The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation

(4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009) (quoting *Twombly* at 556).

II. **Analysis**

A. **Whether Plaintiff Has Standing to Assert the Single Business Enterprise Theory**

Defendant argues, "Given the Pending Bankruptcy Proceedings of Taylors Ltd., the Petition Should be Dismissed Because Esso Chad is not the Proper Party to Assert the single Business Enterprise Theory." [Doc. 17-1, p.7] As this argument appears to be virtually identical to defendant's argument in the case designated as related to this matter - namely, *Buckhorn Partners, LLC v. Taylors International Services, Inc., et al*, Civil Action No. 09-00238, W.D.La. (Doherty, J.) - the Court finds, for the same reasons as in *Buckhorn*, defendant has failed to carry its burden, as the Court finds the defendant has failed to show the law cited in support of this argument is applicable to this matter. [*See Buckhorn*, Doc. 46, pp. 11-12]

B. **Whether the Court Should Exercise Its Discretionary Jurisdiction Over Plaintiff's Claim for Declaratory Relief.**

Count 1 of plaintiff's amended complaint seeks a declaratory judgment from the Court, finding:

> (a) Defendant and Taylors Ltd. to be a single business enterprise, (b) Defendant is the alter ego of Taylors Ltd., (c) Defendant was in privity with Taylors Ltd., and/or (d) Defendant is a successor-in-interest of Taylors Ltd. Plaintiff is further entitled to a judgment declaring that Defendant is liable and legally obligated to satisfy the arbitration award entered against Taylors Ltd. and in favor of Plaintiff.

[Doc. 26, ¶ 38]

The Fifth Circuit has stated, when analyzing whether to decide or dismiss a declaratory judgment suit, a district court must determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its

10

discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003). Additionally, the Fifth Circuit has "identified seven nonexclusive factors for a district court to consider" when exercising its discretion to decide or dismiss the action. *Id.* at 388. Those seven factors include:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.*

In this matter, plaintiff has identified and discussed each of the factors above; defendant has addressed none. This Court finds plaintiff's analysis to be thorough and well-reasoned and hereby adopts plaintiff's argument, found at pp. 13-15 of Doc. 27, as its reasons for denying defendant's motion, seeking dismissal on the basis that this Court should decline to exercise its discretionary jurisdiction over plaintiff's claim for declaratory relief.

### C. Whether "Esso Chad's Refusal to Seek Assets in the Bankruptcy Proceeding Constitutes a Waiver of its Right to Do So Now." [Doc. 17-1, p.16]

After setting forth certain jurisprudential statements regarding waiver, defendant argues:

> Esso Chad had an opportunity to seek the same relief in the liquidation

proceeding, a . [sic] In accordance with Alderney law, the liquidator "continually sought funding" to conduct investigations into potential assets or actions available to Taylors Ltd. for the satisfaction of its creditors' claims. [FN10] Despite these requests, Esso Chad chose not to do so. Its failure to act in the proper forum constitutes a waiver of its right to do so in this forum. In fact, the United States District Court for the Southern District of New York stated the following in its ruling preventing Esso Chad from conducting additional discovery:

> "[W]here, as here, the granting of comity to a [f]oreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion, comity has long been recognized as appropriate." [FN 11]

The foreign bankruptcy proceedings in the Court of Alderney, Channel Islands were granted comity by a United States Court. Accordingly, Esso Chad's cause of action against an alleged bankrupt debtor is properly brought in that court. Esso Chad was advised of this fact, yet failed to act. Accordingly, its claims with respect to any debt alleged to be owing by the bankrupt debtor are waived and/or estopped.

> [FN 10] See Exhibit A, letter dated 10/6/08 from J.R. Toynton, Liquidator, filed of record in the litigation, 06-CV-4401, S.D. N.Y., referenced in Esso Chad's Complaint: "I have continually requested funding from creditors, including ESSO, which would enable me to continue investigations into any potential assets or actions available to the company. To date I have not received any funding that enables me [sic]

> [FN 11] *Esso Exploration and Production Chad, Inc. v. Taylors International Services, Ltd.*, Decision and Order dates 12/4/08, citing *Allstate Life Ins. Co. v. Linter Group, Ltd.* 994 F.2d 996 (2nd Cir. 1993).

[Doc. 17-1, pp. 16-17]

First, questions of waiver are typically not proper subjects of a motion to dismiss; rather, they are matters of defense to be raised at trial, unless it is clear from the face of the complaint and from matters of which the court may take judicial notice that the plaintiff's claims are barred as a matter of law. *La Vecchia v. First Nat. Bank of Tampa*, 112 F.2d 145, 146 (5th Cir. 1940); *Epco Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th cir. 2006). Second, such a determination would require this Court to evaluate matters outside of the pleadings, and thus

convert the motion to one for summary judgment. Defendant consistently argues it "does not consent, nor is it prepared, to convert the issues to a Federal Rule 56 motion. Accordingly, any and all extrinsic evidence not contained in the complaint is immaterial and should be stricken as a matter of law."[2] [Docs. 30-2, p.1 & 36-2, p.1]

### D. Whether "[t]he Petition Should be Dismissed Because Taylors Inc. Is Not a Party to the Contract." [Doc. 17-1, p.17]

Again, with some minor alterations, this argument is virtually identical to defendant's argument in *Buckhorn*. Accordingly, the Court finds, for the reasons provided in *Buckhorn*, defendant is not entitled to relief on this basis. [*See Buckhorn*, Doc. 46, p.19]

### E. Whether Plaintiff Has Insufficiently Plead Allegations of Fraudulent Conduct

Defendant appears to implicitly concede plaintiff has sufficiently plead fraud as to Taylors Ltd., "[h]owever, as to Taylors Inc. itself, [defendant argues] Esso Chad does not provide the requisite specific factual allegations necessitated by F.R.C.P. Rule 9(b)." [Doc. 17-1, p.20] The remainder of defendant's argument would require this Court to analyze matters outside of the pleadings, and therefore, that portion of the argument will not be considered.

Fed. R. Civ. P. 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As stated by the Fifth Circuit:

> Although the particularity demanded by Rule 9(b) differs with the facts of each case, a plaintiff pleading fraud must set forth "the who, what, when, and where ... before access to the discovery process is granted." Anything less fails to provide defendants

---

[2]Although defendant's "consent" to conversion of its motion to dismiss into a motion for summary judgment is unnecessary, *see* Fed. R. Civ. ¶. 12(d), this Court will exercise its discretion to exclude the matters extraneous to the pleadings and will treat the motion as a 12(b)(6) motion, as it finds, in light of the undeveloped state of the record, the parties should be given an opportunity to file properly-supported motions for summary judgment at a later stage of the litigation.

13

with adequate notice of the nature and grounds of the claim.

*Hart v. Bayer Corp.*, 199 F.3d 239, 248, n.6 (5th Cir. 2000)(quoting *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir.1997))(citations omitted).[3]

The Court finds a review of the complaint filed in this matter reveals fraud has been plead with sufficient particularity to place defendant on notice of the nature and grounds of the claim, as it sets forth the "who, what, when, and where" of the alleged fraudulent conduct. [*See* Doc. 26, ¶¶ 15-21]. Furthermore, should this Court find the alter ego and/or single business enterprise theories apply in this matter, any fraudulent activity allegedly engaged in by Taylors Ltd. will potentially be imputed to defendant.

### F. Whether the Arbitration Award is Entitled to Full Faith and Credit

Defendant argues:

> In Count II of its Complaint, Esso Chad seeks to have this Court give full faith and credit to the arbitration award it obtained against Taylors Ltd. Esso Chad is not entitled to the relief sought. A judgment in personam rendered against one who was not designated a party, or who was not made a party by service of process, is not entitled to full faith and credit.

[Doc. 17-1, p.21] However, just days before submission of defendant's motion, the United States Supreme Court held as follows:

> We consider, therefore, the Sixth Circuit's underlying determination that those who

---

[3]The *Hart* case further notes:

> But a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing. Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.

*Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)(citations omitted).

>are not parties to a written arbitration agreement are categorically ineligible for relief.
>
>Section 2 - the FAA's substantive mandate - makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." . . .
>
>Neither provision purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them). Indeed § 2 explicitly retains an external body of law governing revocation (such grounds "as exist at law or in equity"). And we think § 3 adds no substantive restriction to § 2's enforceability mandate. "[S]tate law," therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 " if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 493, n. 9 (1987). Because "traditional principles" of state law allow a contract to be enforced by or against nonparties to the contract through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed.2001), the Sixth Circuit's holding that nonparties to a contract are categorically barred from § 3 relief was error.

*Arthur Andersen LLP v. Carlisle*, 129 S.Ct. 1896, 1901-02 (2009)(footnote and citation omitted).

Accordingly, this Court cannot provide defendant with the relief it seeks (dismissal on the basis that defendant was not a party to the arbitration), until determinations are made as to the law applicable to the claim, and whether the doctrines of either alter ego or single business enterprise apply in this matter.

### G. Whether Plaintiff Has Failed to Properly Serve an Indispensable Party

Again, this argument is virtually identical to defendant's argument in *Buckhorn*. Accordingly, the Court finds, for the reasons provided in *Buckhorn*, defendant is not entitled to relief on this basis. [*See Buckhorn*, Doc. 46, p.19-20]

### H. Whether "the Theory of Unclean Hands Applies to the Present Case" [Doc. 30-2, p.5]

Defendant argues (for the first time in its reply brief), "In this case, Esso/Exxon caused the

15

downfall of Taylors Ltd. by terminating the contract that was intended to generate sufficient funds to fulfill its obligations to Esso Chad. . . . The unclean hands doctrine, therefore, provides an additional basis for dismissal." [Doc. 30-2, p.6] The entirety of defendant's argument is based upon unsworn facts, asserted only by counsel within the reply brief itself, which are disputed by plaintiff. Accordingly, defendant has failed to carry its burden of proof on this ground.

### Motion to Strike

As the Court declined to accept matters outside of the pleadings, the motion to strike is granted. However, this Court notes it is rather disingenuous for defendant to file such a motion when, it too, is guilty of submitting matters outside of the pleadings, beginning with its original motion to dismiss and continuing this practice with each subsequent filing related to the motion. The Court agrees with plaintiff that defendant appears to ask this Court to apply differing standards in this regard to plaintiff and defendant and this Court will decline to do so. However, for the reasons noted above, the Court declines to expand the present procedural vehicle.

### Conclusion

In light of the foregoing, defendant's motions to dismiss [Docs. 17 & 31] are DENIED in their entirety. Defendant's motion to strike [Doc. 36] is GRANTED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this \_\_\_9\_\_\_ day of June, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE